IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARRON BURNETT | : | |
| | : | Civil Action |
| vs. | : | |
| | : | No. 2:25-CV-05168 |
| CONTINENTAL CASUALTY COMPANY | : | |

# CIVIL ACTION – AMENDED CLASS ACTION COMPLAINT

## The Parties

1. The plaintiff, Arron Burnett, is an adult individual citizen and resident of the Commonwealth of Pennsylvania, residing at 44 W. Rockland Street, Philadelphia, Pennsylvania 19144.

2. The defendant, Continental Casualty Company ("Continental"), is a corporation organized and existing under the laws of the state of Illinois, with its principal place of business in Chicago, Illinois, being duly authorized to and conducting business in the Commonwealth of Pennsylvania.

3. At all times material hereto, the defendant, Continental, was duly authorized to and engaged in the business of issuing policies of automobile insurance throughout the United States, including in the Commonwealth of Pennsylvania.

4. The defendant, Continental, regularly and routinely conducts business in the City and County of Philadelphia.

5. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

## Causes of Action

6. The Amended Complaint sets forth two counts.

7. Count I seeks declaratory relief, alone, on behalf of the individual plaintiff, Arron Burnett, and on behalf of the class.

8. Count I asks the Court to reform the policies issued by the defendant, Continental, which, on their face, to include uninsured and underinsured motorist coverage because of the failure of the defendant, Continental, to obtain signed and dated Rejections of Coverage as required by § 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. ("MVFRL").

9. Count II, on the other hand, seeks monetary damages, alone, on behalf of the individual plaintiff, Arron Burnett, and not on behalf of the members of the class.

10. Count II is a breach of contract claim seeking recovery of contractual underinsured motorist benefits. Since the policy issued by the defendant, Continental, does not provide uninsured motorist coverage on its face, the Court must reform the policy, as requested by Count I, to include uninsured motorist coverage in accordance with the requirements of the MVFRL. No claim can be made for breach of contract until the contract has been reformed to provide uninsured motorist coverage. The policy issued by the defendant, Continental, on its face does not provide uninsured motorist coverage. Only after the policy has been reformed as requested in Count I, can there be a ripe claim for breach of the contract, namely, the failure to provide uninsured motorist benefits to the plaintiff, Arron Burnett.

11. Count I and Count II of the Amended Complaint are not duplicative. Count I seeks declaratory relief on behalf of the individual plaintiff and on behalf of the members of the class. Count I does not seek monetary damages. Count II seeks recovery of monetary damages, namely, uninsured motorist benefits. Count I and Count II are separate and distinct. The claims for relief are not duplicative.

**The Collision**

12. On August 22, 2024, the plaintiff, Arron Burnett, was operating a motor vehicle owned by his employer, AIDS Healthcare Foundation, and was stopped at a red traffic signal in the right lane of northbound Roosevelt Boulevard, near its intersection with Bustleton Avenue in Philadelphia, Pennsylvania.

13. While stopped at the red traffic signal, the vehicle operated by the plaintiff, Arron Burnett, was suddenly and violently struck in the rear by a 2017 Infinity Q50 traveling at a high rate of speed.

14. The force of the impact was substantial, resulting in severe, disabling damage to multiple vehicles and causing destruction to a SEPTA bus stop located adjacent to the roadway.

15. Immediately following the collision, the operator of the striking vehicle fled the scene on foot.

16. Subsequent investigation by responding police officers revealed that the striking vehicle had been reported stolen.

17. The operator of the striking vehicle was, upon information and belief, never apprehended and the identity of the operator remains unknown.

**Uninsured Motorist Claim**

18. At all times material hereto, there existed, in full force and effect, a Business Auto Policy of insurance issued by the defendant, Continental, to AIDS Healthcare Foundation providing coverage in accordance with the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") ("Continental Policy").

19. The Pennsylvania MVFRL defines an "uninsured motor vehicle" as follows:

**"Uninsured motor vehicle."** Any of the following:

(1) A motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident.

(2) A motor vehicle for which the insurance company denies coverage or the insurance company is or becomes involved in insolvency proceedings in any jurisdiction.

(3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

75 Pa.C.S.A. § 1702.

20. Follow the collision, as the striking vehicle had been stolen, the operator of the vehicle was unidentified and the accident was reported to the police, plaintiff, Arron Burnett, made claim upon the defendant, Continental, seeking recovery of uninsured motorist benefits under the Continental Policy.

21. Following receipt of the claim for recovery of uninsured motorist benefits under the Policy, the defendant, Continental, denied and disclaimed coverage for the uninsured motorist claim of the plaintiff, Arron Burnett.

22. The basis for the denial and disclaimer of coverage for the uninsured motorist claim of the plaintiff, Arron Burnett, was that uninsured motorist coverage had been rejected in accordance with the MVFRL by the named insured under the Continental Policy.

23. However, the Rejection Of Uninsured Motorist Protection Form purportedly executed by the named insured under the Continental Policy does not comply with the requirements of Section 1731 of the MVFRL since it was not dated; therefore, it is invalid and

uninsured motorist coverage equal to the bodily injury liability limits of the Continental Policy must be made available to the plaintiff, Arron Burnett.[1]

24. Any such rejection of uninsured motorist coverage is required to "specifically comply" with Section 1731 of the MVFRL, 75 Pa.C.S.A. § 1731.

25. Section 1731(c.1) of the MVFRL states, in pertinent part, as follows:

> (c.1) Form of Waiver. – Insurers shall print the rejection forms required by subjection (b) and (c) on separate sheets in prominent type and location. The form must be signed by the first named insured ***and dated to be valid***. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not ***specifically comply*** with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.

75 Pa.C.S.A. § 1731(c.1) (emphasis added).

26. As explained by the Pennsylvania Supreme Court:

> In order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1) as follows: The UIM rejection must appear on a sheet separate from the UM rejection; the first named insured must sign the rejection; and the rejection must be dated.

Winslow-Quattlebaum v. Maryland Ins. Group, 752 A.2d 878 (Pa. 2000).

27. Where an insurer fails to produce a valid UM Rejection Form, coverage is deemed to be equal to the policy's bodily injury liability limits. 75 Pa.C.S.A. § 1731 (c.1).

28. By correspondence dated March 24, 2025, Adam Duncan, National Liability Claims Specialist for the defendant, Continental, provided to the plaintiff a copy of a Rejection Of Uninsured Motorist Protection Form ("Rejection Form") signed by the First Named Insured under the Continental Policy. A copy of the form is attached hereto as Exhibit "A".

---

[1] Upon information and belief, at all times material hereto, the Continental Policy provided bodily injury liability limits of $2,000,000.00.

29. The Rejection Form, although signed, is not dated; therefore, the Rejection Form fails to specifically comply with the requirements of Section 1731 of the MVFRL.

30. Accordingly, the Rejection Form is not valid and uninsured motorist coverage equal to the bodily injury liability limits of the policy must be made available.

31. Recognizing that the Rejection Form was void, by correspondence dated March 24, 2025, counsel for the plaintiff, Arron Burnett, wrote to Adam Duncan, National Liability Claims Specialist for the defendant, Continental, as follows:

> Dear Adam,
>
> Please escalate this file as the rejection form is invalid under PA law as it is ***not dated***. UM Coverage will need to be afforded for this loss matching the liability limits of the underlying policy.
>
> Attached please find the Statute and Case Law supporting our position. I have highlighted the applicable provisions.
>
> Feel free to call mee with any questions.

A copy of the March 24, 2025 correspondence is attached hereto as Exhibit "B" (emphasis added).

32. By correspondence dated that same day, March 24, 2025, Adam Duncan, National Liability Claims Specialist for the defendant, Continental, responded stating:

> I can follow up with underwriting but I did confirm their intent was to reject this coverage as they have done so in the past. They reject wherever possible.

A copy of the March 24, 2025 correspondence is attached hereto as Exhibit "C".

33. In response, by letter dated March 25, 2025 counsel for the plaintiff, Arron Burnett, wrote to Adam Duncan, stating:

> Adam – not trying to be rude or sarcastic, but intent is irrelevant in the Commonwealth.
>
> The Statute governs and the form has to be both signed and dated for the coverage to be rejected.

> Coverage gets afforded up to the limits of liability under these circumstances. I welcome you to confer with counsel.

A copy of the March 24, 2025 correspondence is attached hereto as Exhibit "D".

34. Thereafter, by correspondence dated April 24, 2025, Adam Duncan, National Liability Claims Specialist for the defendant, Continental, reiterated the denial and disclaimer of coverage for the claims of the plaintiff, Arron Burnett, even though the form did not comply with the MVFRL, stating, in pertinent part, as follows:

> I can prepare a more formal letter but I wanted to advise you that our coverage review has concluded that the UM/UIM form is valid despite the lack of a date. Please see case Lieb v. Allstate Property and Cas. Ins. Co.
>
> According to this case a fax machine-written timestamp on a form waiving underinsured motorist coverage satisfied the requirement under Pennsylvania Motor Vehicle Financial Responsibility Law that the form be dated to be valid. The law only required such a form to be dated in some way and not necessarily by the insured to be valid. The email we received from our insured with the rejection form was dated March 29, 2024. Based on the case I've referenced this transmittal date would be recognized.
>
> Please let me know if you have any further questions

A copy of the April 24, 2025 correspondence is attached hereto as Exhibit "E".

35. Thereafter, present counsel was engaged with respect to the denial of the claims of the plaintiff, Arron Burnett, by the defendant, Continental.

36. By correspondence dated May 16, 2025, counsel for the plaintiff, Arron Burnett, wrote to Adam Duncan, stating:

> Please be advised that our office will be proceeding forward with the representation of Arron Burnett in connection with the above matter. At this time, we would appreciate your acknowledging our representation. At the same time, kindly provide us with a full and complete copy of the policy of insurance in effect at the time of the incident, including all Declarations Pages, policy forms and endorsements.

A copy of the May 16, 2025 correspondence is attached hereto as Exhibit "F".

37. In response, Adam Duncan, National Liability Claims Specialist for the defendant, Continental, wrote as follows:

> I can acknowledge receipt although, based on my discussions with Todd Jacobs, I was expecting more substance to your letter. We had presented case law to Mr. Jacobs, which I understand he argues is not precedential, however our insured's intent on this matter is clear. They have historically rejected UM/UIM where allowed and transmitted the rejection form via email which serves as the date. The law simply states the form must be signed and dated to be valid, not that the date must be by the named insured. Even if you argue it does the email, sent by our insured and the signer, should be evidence enough of the date it was executed. Precedent or not the case was heard, speaking to that, and is favorable to our argument. Please provide your theory on this matter and any relevant case law to dispute our position.
>
> I am happy to direct our letter on this matter to your firm instead of Mr. Jacobs and provide what you have requested. We are confident, should you choose to litigate this further, that the evidence will speak for itself and in our favor.

A copy of the May 16, 2025 correspondence is attached hereto as Exhibit "G".

38. By correspondence dated June 3, 2025, counsel for the plaintiff, Arron Burnett, responded, in pertinent part, as follows:

> As you know, Section 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701, et seq., governs, *inter alia*, uninsured motorist ("UM") coverage. While policyholders may elect to reject such coverage, any rejection must "specifically comply" with the requirements of Section 1731.
>
> The statute plainly states:
>
> Any rejection form that does not specifically comply with this section is void.
>
> 75 Pa.C.S.A. § 1731(c.1).
>
> Additionally, as explained by the Pennsylvania Supreme Court:
>
> In order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1) as follows: The UIM rejection must appear on a sheet separate from the UM rejection; the first named insured must sign the rejection; and ***the rejection must be dated***.
>
> Winslow-Quattlebaum v. Maryland Ins. Group, 752 A.2d 878 (Pa. 2000). Where an insurer fails to produce a valid UM rejection form, coverage is deemed to be equal to the policy's bodily injury liability limits.
>
> In the present matter, there is no dispute that the rejection form is not dated. Nonetheless, CNA has taken the position that the date of the email from Brandon Jong, Director of Finance, Operations & Projects for the insured, Aids Healthcare Foundation, transmitting the form to Lisa Hedrick of USI Insurance Services, LLC satisfies the statutory dating requirement. This position is without basis in law or fact. We respectfully suggest that you reconsider your disclaimer of coverage.

The mandate of the MVFRL is clear:

***The forms must be*** signed by the first named insured and ***dated to be valid***.

75 Pa.C.S.A. § 1731(c.1). Specific compliance with the statutory mandate is required. We find your position to be curious at best. The language of the MVFRL is unambiguous. As the Pennsylvania Supreme Court has explained: "when the words of a statute are clear and free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit." Ford v. Am. States Ins. Co., 154 A.3d 237 (Pa. 2017) (citing 1 Pa.C.S.A. § 1921(a)). The courts must apply words according to their common and approved usage. Gregg v. Ameriprise Fin., Inc., 245 A.3d 637 (Pa. 2021). Your strained interpretation actually may give rise to an extra-contractual bad faith claim. We suggest you proceed cautiously.

Moreover, CNA's reliance on Lieb v. Allstate Prop. & Cas. Ins. Co., 610 Fed.Appx. 194 (3d Cir. 2015) is misplaced. In this regard, that unpublished and non-precedential Federal Court decision involved a waiver form that included a machine-printed date on the face of the document. In contrast, the form at issue here lacks any such date. The use of extrinsic evidence or external communications – such as an email transmission – to infer compliance with Section 1731(c.1) is unsupported by the statutory text or relevant case law.

Accordingly, at this time, we respectfully request that CNA reconsider its denial of UM benefits and confirm that Mr. Burnett is entitled to coverage in an amount equal to the policy's bodily injury liability limits. In the meantime, kindly provide a complete, certified copy of the insurance policy at issue, including all declarations pages, endorsements and amendments from the inception of the policy through the present. If you intend to stand by your denial, please so advise. At the same time, kindly advise as to how often CNA has taken this position so that a class action filing can be considered. We look forward to litigating this matter with you.

We appreciate your prompt attention to this matter and look forward to your timely response.

A copy of the June 3, 2025 correspondence is attached hereto as Exhibit "H".

39. By correspondence dated June 11, 2025, the defendant, Continental, denied the request of the plaintiff for reconsideration and confirmed its disclaimer of coverage.

40. Specifically, the correspondence of June 11, 2025 stated as follows;

I write on behalf of CCC in response to your June 3, 2025 letter where you asked that we reconsider our previous position regarding the proper rejection of UM/UIM coverage. We have reviewed your letter and determined our position is unchanged.

In this letter, we summarize the allegations in the matter to place CCC's coverage position in context. This discussion does not reflect CCC's independent assessment of the merits of the matter, and we recognize that the allegations are unsubstantiated at this time. Please

also note that this letter does not modify the terms and conditions of the above-referenced policy and that policy terms that appear in quotations in this letter are defined in the policy, which we suggest that you review together with this letter.

Based on the information currently available to CCC, we understand you seek to recover UM/UIM coverage for injuries Mr. Burnett sustained in the above referenced motor vehicle accident.

CCC issued a Business Auto Liability policy to AIDS Healthcare Foundation for the 04/01/2024 to 04/01/2025 policy period. Our insured signed a UM and UIM rejection form which was then emailed to their broker on March 29, 2024 and emailed to our underwriting department on April 1, 2024.

We understand you argue the forms were not properly dated, as required under Pennsylvania state law, however the email date stamp is adequate to satisfy the requirement the forms must be dated to be valid. We provided Lieb v. Allstate Prop. & Cas. Ins. Co., 640 F. App'x 194, 197-98 (3d Cir. 2016) as a case supporting this position. Specifically, it indicates the form must be signed by the named insured and dated to be valid but not that the named insured must be the one to date it. You have argued that case is not precedential however you have not provided any specific cases that argue against this position.

Our insured has historically rejected UM/UIM coverage where allowed and there is not a question of their intent to do so here. The forms were executed both prior to the policy period and loss date. We reiterate our position that the executed UM/UIM rejection forms by our insured are valid and that UM/UIM coverage is not available for Mr. Burnett for this loss.

In connection with our coverage determination, we may have quoted and/or paraphrased the policy language. However, we reserve the right to rely upon all of the policy's provisions, whether or not specifically quoted and/or paraphrased in this letter. We also reserve the right to modify our position.

If you have any questions or comments regarding the issues discussed in this letter or any other aspect of this matter, please do not hesitate to contact me.

A copy of the June 11, 2025 correspondence is attached hereto as Exhibit "I".

41. The denial and disclaimer of coverage by the defendant, Continental, is violative of the explicit terms and conditions of the Pennsylvania MVFRL since the Rejection Form was not dated.

42. It is undisputed that the Rejection Form at issue is not dated; nonetheless, Continental continues to ignore the fact that the Rejection Form is void.

43. Despite the unambiguous requirements of Pennsylvania law that a Rejection Form must be dated to be valid, the defendant, Continental, has failed and/or refused to extend coverage to the plaintiff, Arron Burnett.

44. The reliance of the defendant, Continental, on extrinsic evidence and external communications to infer compliance with Section 1731(c.1) is unsupported by the statutory text or relevant case law.

45. As such, the plaintiff, Arron Burnett, seeks a declaration in Count I asking the Court to reform the Continental Policy to provide uninsured motorist coverage in accordance with the MVFRL. The plaintiff, Arron Burnett, seeks a declaration that the Continental Policy is required to provide uninsured motorist benefits equal to the bodily injury liability limits of coverage under the Continental Policy.

46. In addition, in Count I of the Amended Complaint, the plaintiff, Arron Burnett, seeks a declaration on behalf of each member of the class that the policy of insurance issued by the defendant, Continental, to each class member under which benefits were claimed, but denied, is to be reformed to provide uninsured and/or underinsured motorist benefits equal to the bodily injury liability limits of the Continental Policy in question.

47. Count I, further, does not seek to solely adjudicate past conduct. In fact, Count I seeks declaratory relief in connection with the past, present and future conduct of the defendant, Continental, in failing to provide uninsured and/or underinsured motorist coverages under policies where the defendant, Continental, has failed to obtain the appropriate Rejections of Coverages as required by the MVFRL.

48. Count I, similarly, does not seek to adjudicate liability. Count I does not request any assessment of negligence or damages. On the contrary, Count I seeks declaratory relief that

the defendant, Continental, is required to provide uninsured and/or underinsured motorist coverage in accordance with the MVFRL under policies issued in Pennsylvania where the defendant, Continental, has failed to obtain signed and dated Rejections of Coverages as required by the MVFRL.

49. Count II of the Amended Complaint, on the other hand, seeks compensatory underinsured motorist benefits from the defendant, Continental, on behalf of the individual plaintiff, Arron Burnett, alone. Count II does not become ripe for adjudication unless and until the Court grants the relief sought in Count I and reforms the Continental Policy to provide uninsured motorist benefits which the defendant, Continental, has refused to pay. The plaintiff, Arron Burnett, may not assert a claim for breach of contract, namely, the failure to make payment of uninsured motorist benefits, until the Court reforms the policy requiring the defendant, Continental, to provide uninsured motorist benefits in accordance with the terms of the MVFRL.

50. Count I and Count II are not duplicative. Count I and Count II seek separate and distinct relief.

**<u>Class Action Allegations</u>**

51. The plaintiff, Arron Burnett, brings this action individually and on behalf of a class of similarly situated persons as a class action pursuant to the Pennsylvania Rules of Civil Procedure.

52. The plaintiff, Arron Burnett, seeks declaratory relief, alone, on behalf of the class. No monetary damages are sought on behalf of the class in this case. Liability and damage issues are not pertinent to the relief sought on behalf of the class. On behalf of the class, the Amended Complaint only seeks a declaration that policies issued by the defendant, Continental, are required to provide uninsured and/or underinsured motorist coverages where the defendant, Continental,

has not obtained and produced signed and dated Rejections of Coverages as required by the MVFRL.

53. The defendant, Continental, has systematically and wrongfully denied uninsured and underinsured motorist coverages under Automobile Policies issued in Pennsylvania where it failed to obtain and produce Rejection of Coverage forms that comply with the requirements of § 1731 of the MVFRL.

54. The plaintiff, Arron Burnett, seeks to represent a class of persons seeking declaratory relief, alone, who are insureds under policies issued by the defendant, Continental, who were injured in motor vehicle accidents as a result of the negligence of an uninsured or an underinsured motorist but who were denied uninsured and/or underinsured motorist benefits under a policy issued by the defendant, Continental, where the defendant, Continental, failed to obtain and produce Rejection of Coverage forms as required by § 1731 of the MVFRL.

55. The plaintiff, Arron Burnett, reserves the right to amend the definition and/or identify subclasses upon completion of class certification.

56. The putative class is limited to residents of the Commonwealth of Pennsylvania in numbers sufficient to allow class certification.

57. The members of the class are so numerous that joinder of them is impracticable.

58. Identification of the members of the class can be ascertained in and through discovery of the files and/or computer data base of the defendant, Continental.

59. A class action is the only practicable means available for the members of the class to pursue the appropriate remedies and receive the necessary uninsured and/or underinsured motorist benefits under the policies of insurance in question.

60. A class action is the only practicable means available to prevent the defendant, Continental, from engaging in the continuous and systematic illegal and unlawful conduct under the MVFRL and to remedy the harm created by this illegal and unlawful conduct.

61. The questions of law and fact are common to the members of the class which the plaintiff, Arron Burnett, seeks to represent.

62. The questions of law and fact common to the members of the class predominate over questions that may affect only individual members.

63. The common questions of law and fact which control this litigation predominate over any individual issues include, but are not limited to:

(a) Each member of the class suffered injury as a result of the negligence of an uninsured and/or underinsured motorist;

(b) Each member of the class was a named insured or an insured under a policy issued by the defendant, Continental, and who made claim for recovery of uninsured and/or underinsured motorist benefits under that policy issued by the defendant, Continental;

(c) Each member of the class was denied uninsured and/or underinsured motorist benefits under a policy of insurance issued by the defendant, Continental, on the grounds that the policy issued by the defendant, Continental, provided no such coverage but where the defendant, Continental, failed to obtain and produce signed and dated Rejection of Coverage forms as required by § 1731 of the MVFRL and where the denial occurred on or after August 5, 2021; and;

(d) Each member of the class is seeking a declaration that the policy of insurance issued by the defendant, Continental, under which claim was made and denied is required to be reformed to provide uninsured and/or underinsured motorist coverage by reason of the failure of the defendant, Continental, to obtain and produce Rejection of Coverage forms as required by § 1731 of the MVFRL.

64. The plaintiff, Arron Burnett, is a member of the class that he seeks to represent.

65. The claim of the plaintiff, Arron Burnett, is typical of the claim of other members of the class which he purports to represent.

66. The plaintiff, Arron Burnett, is well qualified to act as class representative.

67. The plaintiff, Arron Burnett, will fairly and adequately protect the interests of the members of the class.

68. The plaintiff, Arron Burnett, has no interest that is adverse or antagonistic to the interests of the members of the class.

69. The plaintiff, Arron Burnett, is committed to prosecuting the class action.

70. The plaintiff, Arron Burnett, has retained competent counsel who are experienced in litigation of this nature.

71. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

72. Joinder of all class members is impracticable and the likelihood of individual class members prosecuting separate claims is remote due to the fact that the members of the class do not know that they are entitled to uninsured/underinsured motorist coverage.

73. The expense and burden of individual litigation makes it unlikely that a substantial number of the class members will individually seek redress for the wrongs done to them.

74. It is desirable for all concerned to concentrate the litigation in this particular forum for adjudication.

75. The plaintiff, Arron Burnett, anticipates no difficulty in the management of this action as a class action.

76. The class action brought by the plaintiff, Arron Burnett, is a convenient and proper forum in which to litigate the claim.

77. The prosecution of separate actions by individual class members would create the risk of bearing inconsistent determinations that could confront the defendant, Continental, with

incompatible standards of conduct and which could prejudice non-parties to any adjudication or substantially impede their ability to protect their own interests because of the overriding common questions of law and fact involved in the matter.

78. Prosecution of these claims seeking declaratory relief, alone, on behalf of the class, will result in an orderly and expeditious administration of the claims and will foster economies of time, effort and expense.

79. Prosecution of these claims seeking declaratory relief, alone, on behalf of the class, action will contribute to uniformity of decisions concerning the practices of the defendant, Continental.

**COUNT I**
**(Declaratory Relief – Individual Plaintiff and Class Members)**

80. The plaintiff, Arron Burnett, hereby incorporates by reference the foregoing Paragraphs 1 through 79 of this Amended Complaint as though fully set forth herein.

81. This claim for declaratory relief is not duplicative of the breach of contract claim in Count II. On the contrary, Count I of the Amended Complaint seeks only declaratory relief and not any award of monetary damages.

82. This Count I seeks a declaration that all policies issued in Pennsylvania by the defendant, Continental, without uninsured and/or underinsured motorist coverage but for which the defendant, Continental, failed to obtain and produce signed and dated Rejection of Coverage forms as required by § 1731 of the MVFRL are to be reformed to provide uninsured and/or underinsured motorist coverages in amounts equal to the liability coverages of those policies.

83. This Count I is in no way duplicative of the relief sought in Count II of the Amended Complaint. This Count seeks to have the policies at issue reformed to provide all uninsured and underinsured motorist coverages as required by the MVFRL where the defendant, Continental, has

failed to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL. This Count I seeks declaratory relief, alone. Count II seeks breach of contract and monetary damages on behalf of the individual plaintiff, alone.

84. While this Count I seeks reformation of policies issued by the defendant, Continental, on behalf of the individual plaintiff and on behalf of members of the class, this Count I does not seek to adjudicate any issues of liability and damage. On the contrary, this Count I addresses past, present and future conduct of the defendant, Continental. In the past, the defendant, Continental, denied and disclaimed coverage under policies where it had wrongfully and improperly failed to obtain and produced signed and dated Rejection of Coverage forms as required by the MVFRL. Presently, the defendant, Continental, continues to deny coverage under policies issued by the defendant, Continental, in the Commonwealth of Pennsylvania where the defendant, Continental, has failed to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL. In the future, it is believed, and therefore averred, that the defendant, Continental, will continue to engage in this willful and wanton conduct in refusing to provide uninsured and underinsured motorist coverages under policies issued in the Commonwealth of Pennsylvania where the defendant, Continental, has failed to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL, as is evidenced by its continuing past, present and future refusal to provide coverage under such policies to the individual plaintiff, Arron Burnett, and to members of the class.

85. This Court may not address the breach of contract claims in Count II of this Amended Complaint when and until the Court grants the relief sought in this Count I seeking reformation of, *inter alia*, the policy under which the plaintiff, Arron Burnett, has made claim for recovery of uninsured motorist benefits. The claim in Count II seeking recovery of uninsured

motorist benefits on behalf of the individual plaintiff, Arron Burnett, alone, is not ripe for adjudication until this Court grants the relief sought in this Count I finding that the policy under which the plaintiff, Arron Burnett, has made claim is, in fact, required to provide uninsured motorist benefits in accordance with the terms and provisions of the MVFRL.

86. All motor vehicle policies issued in the Commonwealth of Pennsylvania are required to provide uninsured and underinsured motorist coverage unless such coverage is properly rejected by the first named insured in accordance with the requirements of the MVFRL.

87. Specifically, Section 1731 of the MVRFL states, in pertinent part, as follows:

**§ 1731. Availability, scope and amount of coverage.**

**(a) Mandatory offering.** No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

**(b) Uninsured motorist coverage.** Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

..........................................................
Signature of First Named Insured

..........................................................
Date

. . . .

**(c) Underinsured motorist coverage.** Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

..........................................................
Signature of First Named Insured

..........................................................
Date

**(c.1) Form of Waiver**. Insurers shall print the rejection forms required by subjection (b) and (c) on separate sheets in prominent type and location. The form must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

. . . .

75 Pa.C.S.A. § 1731.

88. As succinctly explained by the Pennsylvania Supreme Court:

In order to be valid, UM or UIM rejection forms must comply with the requirements of section 1731(c.1) as follows: The UIM rejection must appear on a sheet separate from the UM rejection; the first named insured must sign the rejection; and the rejection must be dated.

Winslow-Quattlebaum v. Maryland Ins. Group, 752 A.2d 878 (Pa. 2000).

89. Where an insurer fails to produce a valid UM or UIM Rejection Form, coverage equal to the policy's bodily injury liability limits must be afforded. 75 Pa.C.S.A. § 1731 (c.1).

90. The Rejection Form obtained by the defendant, Continental, is not dated.

91. As such, the Rejection Form is not valid.

92. The denial and disclaimer of coverage by the defendant, Continental, is violative of the explicit terms and conditions of the Pennsylvania MVFRL since the Rejection Form was not dated.

93. It is undisputed that the Rejection Form at issue is not dated; nonetheless, Continental continues to ignore the fact that the Rejection Form is void.

94. The policy issued by the defendant, Continental, under which claim has been made by the plaintiff, Arron Burnett, for recovery of uninsured motorist benefits is required to provide uninsured motorist benefits in an amount equal to the bodily injury liability limits of the policy because of the failure of the defendant, Continental to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL.

95. The plaintiff, Arron Burnett, maintains the position that he is entitled to a declaration that the policy issued by the defendant, Continental, under which he has made claim for recovery of uninsured motorist benefits is required to provide uninsured motorist coverage up to the bodily injury liability limits of the Continental Policy by reason of the failure of the defendant, Continental, to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL.

96. The plaintiff, Arron Burnett, is entitled to a declaration that the Continental Policy is required to provide uninsured motorist coverage equal to the bodily injury liability limits of the Continental Policy.

97. In addition, each member of the class is entitled to a declaration that the policy of insurance issued by the defendant, Continental, under which claim was made for recovery of uninsured and/or underinsured motorist coverage is required to provide uninsured and/or underinsured motorist coverage in an amount equal to the liability limits under the pertinent policy of insurance issued by the defendant, Continental, because of the failure of the defendant, Continental, to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL.

98. The controversy poses an issue for judicial determination under the Declaratory Judgment Act.

99. The controversy involves substantial rights of the parties to the action.

100. A judgment of this court in this action will also be useful for the purpose of clarifying and settling the legal relations at issue between the parties.

101. The plaintiff, Arron Burnett, and members of the class are entitled to a declaration that the policies issued by the defendant, Continental, under which claims have been made for recovery of uninsured and/or underinsured motorist benefits are required to provide uninsured and/or underinsured motorist coverages in an amount equal to the liability limits under the pertinent policies of insurance issued by the defendant, Continental, by reason of the failure of the defendant, Continental, to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL.

WHEREFORE, the plaintiff, Arron Burnett, respectfully requests that the Court enter an Order:

(a) declaring that the policy of insurance issued by the defendant, Continental, under which the plaintiff, Arron Burnett, has made claim, is required to provide uninsured and/or underinsured motorist benefits in an amount equal to the bodily injury liability limits of that

policy because of the failure of the defendant, Continental, to obtain and produce a signed and dated Rejection of Coverage form as required by the MVFRL;

(b) declaring that each member of the class is entitled to a declaration that the policy issued by the defendant, Continental, under which claim has been made for recovery of uninsured and/or underinsured motorist benefits is required to provide uninsured and/or underinsured motorist benefits in an amount equal to the liability limits of the applicable policy issued by the defendant, Continental, by reason of the failure of the defendant, Continental, to obtain and produce signed and dated Rejection of Coverage forms as required by the MVFRL; and

(c) awarding interest, counsel fees and costs; and

(d) such other relief as the court deems appropriate.

**COUNT II**
**(Breach of Contract – Individual Plaintiff, Alone)**

102. The plaintiff, Arron Burnett, hereby incorporates by reference the foregoing Paragraphs 1 through 101 of this Amended Complaint as though fully set forth herein.

103. This Count is a breach of contract claim seeking monetary relief on behalf of the individual plaintiff, Arron Burnett, alone. This breach of contract claim is not asserted on behalf of the class. This breach of contract claim only becomes ripe for adjudication when the Court grants the relief sought in Count I of this Amended Complaint, namely, a declaration that the policy of insurance issued by the defendant, Continental, under which the plaintiff, Arron Burnett, has made claim for recovery of uninsured motorist benefits is required to provide uninsured motorist coverage in an amount equal to the liability limits of coverage of that policy.

104. On August 22, 2024, an unidentified driver negligently and carelessly operated a motor vehicle in a manner that caused a collision with the vehicle operated by the plaintiff, Arron Burnett, and owned by his employer, AIDS Healthcare Foundation.

105. At the time of the collision, the Continental Policy was in full force and effect.

106. The Pennsylvania MVFRL defines an "uninsured motor vehicle" as follows:

**"Uninsured motor vehicle."** Any of the following:

> (1) A motor vehicle for which there is no liability insurance or self-insurance applicable at the time of the accident.
>
> (2) A motor vehicle for which the insurance company denies coverage or the insurance company is or becomes involved in insolvency proceedings in any jurisdiction.
>
> (3) An unidentified motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

75 Pa.C.S.A. § 1702.

107. Follow the collision, as the striking vehicle had been stolen, the operator of the vehicle was unidentified and the accident was reported to the police, plaintiff, Arron Burnett, made claim upon the defendant, Continental, seeking recovery of uninsured motorist benefits under the Continental Policy.

108. It is undisputed that the striking vehicle is an "uninsured motor vehicle" under the applicable policy of insurance and Pennsylvania law.

109. Following receipt of the claim for recovery of uninsured motorist benefits under the Policy, the defendant, Continental, denied and disclaimed coverage for the uninsured motorist claim of the plaintiff, Arron Burnett.

110. The basis for the denial and disclaimer of coverage for the uninsured motorist claim of the plaintiff, Arron Burnett, was that the Rejection Form executed by the named insured under the Continental Policy complied with the requirements of the MVFRL.

111. However, the Rejection Of Uninsured Motorist Protection Form purportedly executed by the named insured under the Continental Policy does not comply with the requirements of Section 1731 of the MVFRL since it was not dated; therefore, it is invalid and uninsured motorist coverage equal to the bodily injury liability limits of the Continental Policy must be made available to the plaintiff, Arron Burnett.

112. Any such rejection of uninsured motorist coverage is required to "specifically comply" with Section 1731 of the MVFRL, 75 Pa.C.S.A. § 1731.

113. Section 1731(c.1) of the MVRFL states, in pertinent part, as follows:

> (c.1) Form of Waiver. – Insurers shall print the rejection forms required by subjection (b) and (c) on separate sheets in prominent type and location. The form must be signed by the first named insured ***and dated to be valid***. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not ***specifically comply*** with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.

75 Pa.C.S.A. § 1731(c.1) (emphasis added).

114. Where an insurer fails to produce a valid UM Rejection Form, coverage is deemed to be equal to the policy's bodily injury liability limits. 75 Pa.C.S.A. § 1731 (c.1).

115. The Continental Policy under which the plaintiff, Arron Burnett, has made claim for recovery of uninsured motorist benefits does not, on its face, provide such coverage. This Count II seeking breach of contract damages for failure to pay uninsured motorist benefits to the plaintiff, Arron Burnett, only becomes ripe for adjudication if the Court grants the relief sought in Count I, namely, reformation of the Continental Policy requiring it to provide uninsured and/or underinsured motorist coverages in accordance with the requirements of the MVFRL.

116. Assuming that the Court grants the relief sought in Count I of this Amended Complaint, namely, reformation of the Continental Policy to provide uninsured motorist benefits in accordance with the requirements of the MVFRL, the plaintiff, Arron Burnett, is entitled to present a claim for and to recover uninsured motorist benefits from the defendant, Continental, under the Continental Policy in connection with injuries sustained in the August 22, 2024 motor vehicle collision.

117. The injuries sustained by the plaintiff, Arron Burnett, in the August 22, 2024 motor vehicle collision were caused by the negligence of the operator of the uninsured motor vehicle.

118. The negligence and carelessness of the unidentified driver consisted of, but was not limited to, the following:

(a) operating the vehicle at an excessive rate of speed under the circumstances;

(b) failing to keep the vehicle under proper and adequate control;

(c) failing to be attentive to the road, traffic conditions and/or traffic controls;

(d) failing to keep a proper lookout;

(e) failing to give proper and sufficient warning of the approach of the vehicle;

(f) failing to operate the vehicle in a safe and attentive manner;

(g) failing to bring the vehicle to a stop prior to striking the vehicle operated by the plaintiff, Arron Burnett;

(h) causing the vehicle to violently collide with the rear of the stopped vehicle operated by the plaintiff, Arron Burnett;

(i) failing to take evasive action to avoid colliding with the vehicle operated by the plaintiff, Arron Burnett;

(j) operating the vehicle in a negligent and careless manner without due regard for the rights, safety and position of the vehicle operated by the plaintiff, Arron Burnett;

(k) failing to apply the brakes in sufficient time to avoid striking the vehicle operated by the plaintiff, Arron Burnett;

(l) operating the vehicle while unfamiliar with the roadway and traffic conditions;

(m) failing to maintain an assured clear distance ahead;

(n) violating 75 Pa.C.S.A. § 3361, *Driving vehicle at safe speed*;

(o) violating 75 Pa.C.S.A. § 3736, *Reckless driving;*

(p) violating 75 Pa.C.S.A. § 3714, *Careless Driving*.

119. As a result of the August 22, 2024 collision, the plaintiff, Arron Burnett, sustained a severe shock to the nerves and nervous system and severe and numerous bodily injuries including, but not limited to: sub-acute cervical radiculopathy affecting the left C5 nerve root; cervical disc protrusion; multiple subluxations throughout the cervical, thoracic and lumbar spine; trigger points in the cervical, thoracic and lumbar paraspinals; sprain of the ligaments of the cervical, thoracic and lumbar spine; lumbago with sciatica; lumbar facet joint pain; sprain of the rotator cuff (capsule) and left shoulder girdle; contusions of the left shoulder, left ankle and left lower extremity; headaches; injury and/or aggravation of injury to the cervical, thoracic and lumbar spine, left shoulder, left ankle, left lower extremity, right leg and head; as well as other severe neurologic, psychologic and orthopedic injuries as well as any other injuries or aggravation of injuries that may be discovered or diagnosed, the extent of which may not yet be known, and the plaintiff has suffered and may and probably will in the future continue to suffer great pain and agony, all of which may be permanent in nature.

120. The plaintiff, Arron Burnett, has suffered and will continue to suffer pain, restriction and disability as a result of the injuries sustained in the August 22, 2024 motor vehicle collision.

121. The plaintiff, Arron Burnett, has suffered and will continue to suffer a work loss and impairment of earning capacity as a result of the injuries sustained in the August 22, 2024 motor vehicle collision.

122. The plaintiff, Arron Burnett, has incurred and will continue to incur medical expenses as a result of the injuries sustained in the August 22, 2024 motor vehicle collision.

123. The defendant, Continental, has breached the Continental Policy by disclaiming coverage of uninsured motorist benefits to the plaintiff, Arron Burnett.

124. Assuming that the Court grants the relief sought in Count I of this Amended Complaint, namely, reformation of the Continental Policy to provide uninsured motorist benefits in accordance with the requirements of the MVFRL, the plaintiff, Arron Burnett, is entitled to present a claim for and to recover uninsured motorist benefits from the defendant, Continental, under the Continental Policy in connection with injuries sustained in the August 22, 2024 motor vehicle collision.

WHEREFORE, the plaintiff, Arron Burnett, respectfully requests that the Court enter an Order awarding uninsured motorist benefits to the plaintiff, Arron Burnett, and against the defendant, Continental Casualty Company, in an amount up to the bodily injury liability limits of the Continental Policy.

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

DATE: 10/13/25

BY: /s/ Jeffrey K. Stanton
Jeffrey Stanton, Esquire
James C. Haggerty, Esquire
Dennis C. Coyne, Esquire
PA Attorney I.D. # 311249; 30003; 316918
1801 Market Street, Suite 1100
Philadelphia, PA 19103
Phone: (267) 350-6600
Fax: (215) 665-8197
Attorneys for Plaintiffs